UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DIANE RIDGELY, ET AL                         CIVIL ACTION

VERSUS                                        NO. 07-2146

FEDERAL EMERGENCY MANAGEMENT          SECTION "C"  (4)
AGENCY, ET AL

ORDER AND REASONS

This matter comes before the Court on the plaintiffs' motion for class-wide

preliminary injunction.  Having considered the record, the memoranda and argument

of counsel, and the law, the Court has determined that a preliminary injunction is

appropriate for the following reasons.

The plaintiffs in this now-certified class action seek declaratory and injunctive

relief against the Federal Emergency Management  Agency, U. S. Department of

Homeland Security, Michael Chertoff, and R. David Paulison (collectively "FEMA")

under the Fifth Amendment to the United States Constitution, the Stafford Act, 42

U.S.C. § 5151, *et seq.*,  and the Administrative Procedure Act, 5  U.S.C. §§ 552(a)(2) & 706

("APA").   The class members have applied for and received assistance under Section

1

408 of the Stafford Act, 42 U.S.C. § 5174,  as a result of being displaced by Hurricanes

Katrina and Rita.  The first "Section 408 Class" concerns, for present purposes, those

persons who have been or will be denied continued assistance and who have appealed

or will appeal the denial of benefits and three subclasses of those persons who (1) have

had benefits terminated without an adequate and/or timely notice of the reasons for

termination, (2) have had benefits terminated without an adequate pre-termination

hearing, or (3) have had benefits terminated due to efforts by FEMA to recover alleged

overpayments.   The second, "Repayment Class," consists of persons who received from

FEMA a demand for repayment of benefits received.  Each of the named plaintiffs have

had Section 408 benefits denied.  (Rec. Doc. 4, p. 1).   Their Complaint sets forth ten

claims against the defendants, eight of which allege Fifth Amendment due process

violations, one of which alleges an APA violation and one of which alleges violation of

the Stafford Act and FEMA's rules.  (Rec. Doc. 1, ¶¶ VIII. 93-106).

**Preliminary Injunction**

A preliminary injunction is an extraordinary and drastic remedy that is granted

only when the movers carry the burden of persuasion by a clear showing.   Charles

Alan Wright, Arthur R. Miller & Mary Kay Kane, 11A *Federal Practice & Procedure* § 2948

(West).  It is appropriate only when the movers establish: (1) a substantial likelihood

that they will prevail on the merits; (2) a substantial threat that irreparable harm will

result if the injunction is not granted; (3) the threatened injury outweighs the threatened

harm to the defendants; and (4) the granting of the preliminary injunction will not

disserve the public interest.  Id.; Kahara Bodas Co., L.L.C. v. PerusahaanPertambangan

Minyak Dan Gas Bumi Negara, 335 F.3d 357, 363 (5th Cir. 2003).   All four prerequisites

must be met.   As noted by Judge Duval in McWaters v. FEMA, 408 F.Supp.2d 221, 228

(E.D.La. 2005), however, a sliding scale applies which measures the hardships that

issuance or denial would cause balanced against the degree of likelihood of success on

the merits.  When the other factors weigh in favor of  injunctive relief then a showing of

*some* likelihood of success on the merits can justifies granting the preliminary

injunction.  Id.  Here, the plaintiffs rely on evidence establishing a history of alleged

"chaos and confusion" on the part of the defendants as support for an injunction that

requires "constitutionally adequate notice and an opportunity to be heard before

subsistence benefits are terminated" or repayment demanded.  (Rec. Doc. 11, pp. 2-3).

**Hardships**

Because it appears that the final three considerations for a preliminary injunction

require less discussion than the more substantive challenges to the  merit of the

plaintiffs' claims, the Court will discuss them first.  The plaintiffs claim imminent harm

and irreparable injury in the loss of Section 408 assistance without affording pre-

termination hearings or adequate notice because "[h]omelessness is a near certainty for

many recipients, and the harm is immeasurable," while others who are not evicted will

be forced to move to "less adequate accommodations," despite any monetary award

that may be received thereafter.  (Rec. Doc. 11, p. 21).   The defendants offer three

arguments that irreparable harm is lacking.   First, they argue that "even if [p]laintiffs

prevail in this case, they will be in exactly the same position they are in today.   Because

plaintiffs do not seek any change whatsoever in their circumstances, denial of a

preliminary injunction cannot injure them at all, let alone irreparably."  The Court find

that the defendants misperceive the nature of the plaintiffs' claims.   The plaintiffs allege

that FEMA's procedures are so flawed and haphazard that the outcomes are often

erroneous and certainly unreliable.   While the focus of the lawsuit is on the process, the

assumption is that with minimal due process imposed, the outcomes will in fact be

more accurate and reliable.   For many members of the class, this infusion of due

process will likely result in favorable outcomes whereas under the current system,

erroneous terminations will not be corrected until appeal and, because of the allegedly

flawed processes of appeal, may go uncorrected entirely.   Failure to correct these

allegedly flawed procedures, therefore, does injure members of the class.   Second, they

argue that the plaintiffs "essentially ask for money" in the form of assistance while they appeal adverse eligibility or recoupment determinations.   While again, the Court finds that the defendants misperceive the nature of the law suit,  even if it was just about "money,"  for impoverished people, an erroneous denial of Section 408 funding brings the prospect of homelessness immediately to the front.  Third, the defendants argue that plaintiffs' delay in seeking injunctive relief weighs against the existence of the required irreparable harm.   (Rec. Doc. 51, pp. 21-22).     Even if the particular plaintiffs did delay, the delay may well have been the result of the defendants' allegedly byzantine procedures.   Furthermore, the class has now been certified and includes recipients of Section 408 housing funds who have not yet been terminated.   Court finds no merit in any of the defendants' arguments that the plaintiffs face no irreparable harm if not afforded the injunctive relief providing proper notice and a hearing prior to having the disaster subsidy eliminated.

Turning to two other factors in weighing whether injunctive relief is appropriate, the plaintiffs argue that the injury with which they are threatened substantially outweighs any threatened harm to the defendants and will also serve the public interest.  They cite the district court findings in a companion case, Association of Community Organizations for Reform Now (ACORN) v. Federal Emergency

Managment Agency (FEMA), 463 F.Supp. 2d 26, 37 (D.C.D.C. 2006), stayed in part, 2006

WL 3847842 (D.C. Cir), reconsideration denied, 2007 U.S. App. LEXIS 929 (D.C. Cir.),

appeal dismissed and preliminary injunction vacated, 2007 U.S. App. LEXIS 10569

(D.C.Cir.), Association of Community Organizations for Reform Now (ACORN) v.

Federal Emergency Management Agency (FEMA), 2007 U.S. App. LEXIS 929 (D.C. Cir.).

In the ACORN case, Judge Leon acknowledged that "the public has an interest in the

government maintaining procedures that comply with constitutional requirements."

ACORN, 463 F.Supp. 2d at 36.[1]  The plaintiffs argue that the harm facing the plaintiffs

---

[1]        The Court agrees with much of the opinion of Judge Leon in ACORN.
This Court was concerned, however, with the admonition by the D.C. Circuit in
denying reconsideration of its partial grant and partial denial of the injunction entered
in ACORN.  "Insofar as plaintiff-appellees claim a property right in *section 408* benefits,
which they have neither received nor shown the eligibility for, we find it likely that
Heckler v. Lopez, 463 U.S. 1328 ... (1983), prevents this court from upholding the district
court's injunction."  ACORN, 2007 U.S.App.LEXIS 929 (D.C.Cir.) (emphasis original).
The Heckler case involved the termination of social security benefits and whether a
portion of an injunction be stayed.  Justice Rehnquist, sitting as a Circuit Justice, stayed
that portion of the injunction that required the Secretary to pay benefits to certain
recipients who had not been found disabled.  Justice Rehnquist found that this
"significantly interferes with the distribution between administrative and judicial
responsibility for enforcement of the Social Security Act which Congress has
established."  Heckler, 463 U.S. at 1331.  That issue is distinguishable in that this class
includes plaintiffs who are currently receiving Section 408 benefits.  To the extent the
D.C. Circuit found that those who had already been cut off from benefits could not get
injunctive relief retroactively, this Court is not bound by that conclusion.

and the public interest renders relatively insignificant the costs of pre-termination

hearings that may be incurred by the defendants, which they argue may afford a more

efficient method of handling claims and appeals in the end.   The plaintiffs also point to

FEMA's largesse with regard to the process afforded previous disaster victims, which

ensured that due process rights were protected.   The plaintiffs argue that the harm of

threatened homelessness without proper notice and hearing, and the adverse effects on

health, safety and well being on the individual plaintiffs as well as the communities in

which they live are extremely serious in comparison to the burden they seek to impose

on FEMA, which "is neither new nor undue."   (Rec. Doc. 11, p. 24).   The Court agrees

with the plaintiff.

    With regard to the final component for a preliminary injunction, the plaintiffs

maintain that the proposed injunction will serve the public interest by continuing to

shelter thousands of displaced persons and enhancing the public safety and function of

the communities within which they now live.   The defendants argue that the proposed

injunction would "overwhelm FEMA and prevent it from carrying out the duties

Congress has directed that it perform" because it would "prevent FEMA from

responding promptly to disasters as they occur ... contrary to the public's interest in

obtaining emergency relief when it is need (sic), and would undermine Congress' goal

... that the Federal Government can respond to emergencies quickly and effectively."

(Rec. Doc. 51, p. 24).   The Court is dismayed at this response.   We are almost two years

out from Hurricane Katrina devastating this area.   Many people who initially received

the needed aid have moved on with their lives and no longer require the assistance.

This litigation concerns only those persons who have been approved for Section 408

housing assistance and are either continuing to receive it today or have relatively

recently been terminated.   While the Court recognizes the urgency of getting aid to

people quickly in the aftermath of a catastrophe, it fails to perceive a similar urgency in

terminating that aid, particularly when the streamlined procedures allegedly terminate

those who are still eligible and desperately in need.   The Court is bewildered at how

infusing more due process in the termination phase threatens FEMA's ability to

respond to future disasters.   Indeed, the Stafford Act under which FEMA operates

would appear to favor error on the side of the victims of a disaster in a close call.   The

mandate of the Stafford Act is "to provide an orderly and continuing means of

assistance by the Federal Government... to alleviate suffering and damage which result

from...disasters."   42 U.S.C. § 5121(b).   The statute anticipates that "disasters often

cause loss of life, human suffering, loss of income, and property loss and damage."   42

U.S.C. § 5121(a)(1).   On the other hand, the Court does recognize the severity of  the

threat to the plaintiffs, who may be erroneously terminated because of inadequate

procedures and, at a minimum, need adequate notice to begin their lives anew yet

again.  The Court finds that the proposed injunction does not pose a significant harm to

FEMA and actually serves rather than disserves the public's interest.

**Likelihood of success on the merits**: **due process claims**

The battleground of this motion lies in and around this factor.[2]  In order to

succeed on the merits of their due process claims, the plaintiffs must establish a

property interest in the Section 408 benefits that is protected by the Due Process Clause

and that the process used by FEMA was constitutionally deficient.  Logan v.

Zimmerman Brush Co., 455 U.S. 422, 428 (1982). In determining whether

constitutionally adequate notice has been provided, the Court considers (1) the private

interest that will be affected by the official action, (2) the risk of an erroneous

deprivation of such interest through the procedures used and (3) the probable value, if

any, of additional or alternative procedural safeguards, and the government's interest,

its function and the fiscal and administrative burdens entailed by the additional or

---

[2]        The defendants have also filed a motion to dismiss pursuant to Fed. R.
Civ. P. 12(b)(1) and 12(b)(6), based on the arguments presented in opposition to this
motion for preliminary injunction.   Because the parties are unable to agree as to an
alternative scheduling of motions, that motion remains set for hearing at a later date, at
which time these issues can be revisited.

substitute procedural requirements.  Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

The plaintiffs first argue that they have a protected property interest in Section

408 benefits.  The plaintiffs find constitutional fault with the process used by FEMA in a

number of specific ways.   First, they argue that FEMA fails to provide a pre-

termination hearing and imposes an unfair and extended appeals process; second, that

FEMA fails to provide Section 408 recipients with adequate written notice of the reasons

for termination of assistance;  third,  that FEMA fails to provide *any* written notice to

Section 408 recipients who FEMA believes has been overpaid by some *other* assistance

before terminating their 408 assistance;  fourth, that FEMA fails to provide adequate

written notice to those from whom it seeks repayment of alleged overpayments,

including a failure to inform of the recipient's right to seek a waiver or compromise of

the recovery.   These arguments are fairly straightforward due process arguments.  In

opposition, the defendants present challenges to the alleged due process violations on a

number of fronts.

**Case or controversy/standing/mootness**

The defendants first argue that subject matter jurisdiction is lacking because

there is no "case or controversy" for purposes of Article III of the Constitution under

Allen v. Wright, 468 U.S. 737, 750 (1984) and Bayou Liberty Assn. v. United States Corps

of Engineers, 217 F.3d 393, 397 (5th Cir. 2000).   This argument is based on the fact that

the plaintiffs do not challenge the substantive determinations made by FEMA, which

renders any judicial determination advisory.

FEMA also contends that the plaintiffs' standing is undermined because they

cannot articulate an injury that can be addressed by a favorable decision because a

change in FEMA procedures will not change their status.[3]   Under Steel Co. v. Citizens

for a Better Environment, 523 U.S. 83, 102-103 (1998) and Lujan v. Defenders of Wildlife,

504 U.S. 555, 560 (1992), the "irreducible constitutional minimum of standing" has three

components: that there is an injury-in-fact suffered by the plaintiffs that is concrete and

actual or imminent, not conjectural or hypothetical, that there is causation with a fairly

traceable connection between the alleged injury and challenged conduct and that there

be redressability with a likelihood that the requested relief will redress the alleged

injury.

Here the plaintiffs have claimed injury in the process used by the defendants, not

---

[3]         The defendants also argue that the claims of Ridgley and Dickson are
moot because FEMA has withdrawn its repayment demand after suit was filed.  The
plaintiffs argue the claims are not moot because of the existence of the due process
claim.  The Court agrees that these two plaintiffs representatives do maintain a interest
in the due process claims made.

the results reached by the process.[4]   For the reasons stated earlier in this opinion, the

Court finds that the defendants misperceive the plaintiffs' claims.   To repeat, the

plaintiffs allege that FEMA's procedures are so flawed and haphazard that the

outcomes are often erroneous and certainly unreliable.   While the focus of the lawsuit is

on the process, the assumption is that with minimal due process imposed, the outcomes

will in fact be more accurate and reliable.   For many members of the class, this infusion

of due process will likely result in favorable outcomes whereas under the current

system, erroneous terminations won't be corrected until appeal and, because of the

allegedly flawed processes of appeal, may go uncorrected entirely.   Failure to correct

these allegedly flawed procedures, therefore, does injure members of the class.   The

Court finds that the plaintiffs have sufficiently established standing for present

purposes, and the defendants' argument on this issue is unpersuasive.

**Sovereign immunity**

Next, the defendants argue that any due process claims are barred by sovereign

---

[4]        The Bayou Liberty court dismissed as moot a request for injunctive relief
because the event sought to be enjoined has occurred and meaningful relief is not
available.   Id., 217 F.3d at 396.   The Fifth Circuit did recognize, however, that the
capable-of-repetition doctrine applies in exceptional situations where the challenged
action is too short in duration to be litigated prior to cessation and there is a reasonable
expectation that the same complaining party will be the subject of the same action
again. Id., 217 F.3d at 398.

immunity, which has not been waived, and that the challenged conduct falls within the

discretionary function exception afforded by the Stafford Act because it involves a

significant degree of judgment and choice not statutorily prescribed and grounded in

social, economic and political policy as required by <u>Berkovitz v. United States</u>, 486 U.S

531 (1988).  (Rec. Doc. 51, pp. 9-12).  If judgment is involved, it must be "of the kind that

the discretionary exception was designed to shield."  <u>Berkovitz</u>, 486 U.S. at 536-537.  "In

sum, the discretionary exception insulates the Government from liability if the action

challenged in the case involves the permissible exercise of policy judgment."  <u>Id.</u>

The Court respectfully disagrees with the defendants' position on sovereign

immunity, and adopts Judge Duval's reasoning on this serious issue. "[T]his Court find

that its authority to review FEMA's actions clearly exists as to any actions that are

mandated by statute, and more importantly, any actions that may rise to the level of a

constitutional violation by the agency." <u>McWaters v. Federal Emergency Management</u>

<u>Agency (FEMA)</u>, 436 F.Supp.2d 802, 812 (E.D.La. 2006).

> [T]he Court's understanding remains that FEMA is not immune from all
> judicial review, but rather only from review of those acts that are
> discretionary in nature.  Section 5148 of the Stafford Act and other door-
> closing statutes "do not, unless Congress expressly provides, close the
> door to constitutional claims, provided that the claim is colorable and the
> claimant is seeking only a new hearing or other process rather than a
> direct award of money."   ... Notably, FEMA has still cited no factually
> analogous authority to demonstrate that Congress intended FEMA to be

completely immune from judicial review for mandatory acts.  "Where
Congress intends to preclude judicial review of constitutional claims its
intent to do so must be clear ... in part to avoid the 'serious constitutional
question' that would arise if a federal statute were construed to deny any
judicial forum for a colorable constitutional claim." ... The Stafford Act's
non-liability provision" states that FEMA will face no liability for
discretionary actions; it does *not* say FEMA will face no liability for
constitutional violations.  The Court finds that Section 5148 does not
constitute the kind of express waiver contemplated by the Supreme Court
...  First, the statute itself contains no explicit language barring judicial
consideration of constitutional challenges. ... Secondly, ... the Court agrees
theat FEMA is not competent to decide constitutional questions as to the
validity of its regulations, policies and procedures. ...  Finally, so that the
Stafford Act's non-liability provision remains constitutional, the Court
will construe it in such a way as to leave open review of constitutional
questions.

McWaters, 436 F.Supp.2d at 813(citations omitted)(emphasis original).

**Property interest**

   The defendants also argue that the plaintiffs have failed to state a due process

claim because they do not possess a protectable property interest in "continuing"

Section 408 benefits because, in the end, FEMA retains absolute discretion as to the

initial receipt and termination of Section 408 benefits.  (Rec. Doc. 51, p. 15).   The

plaintiffs have all been deemed eligible to receive Section 408 benefits.  The Court finds

that the fact that the eligibility must be continuing does not deprive the plaintiffs of the

property right incurred with their "legitimate claim of entitlement to it." Board of

Regents v. Roth, 408 U.S. 564, 577 (1972).   The Court sees no relevant difference

between the plaintiffs' property rights to Section 408 benefits and those rights belonging

to the plaintiffs in <u>Mathews</u>, <u>supra</u> (social security benefits), <u>Goldberg v. Kelly</u>, 397 U.S.

254 (1970) (welfare), <u>Thompson v. Washington</u>, 497 F.2d 626 (D.C.Cir. 1973)(public

housing) and <u>Caulder v. Durham Housing Authority</u>, 433 F.2d 998 (4th Cir. 1970) (public

housing).

**Adequacy of process**

The plaintiffs are seeking a "meaningful pre-termination process."   (Rec. Doc. 63,

p. 16).   The defendants argue that the notice provided by FEMA is constitutionally

adequate under <u>Mathews</u>, <u>supra</u>.   Notably, the defendants do not attempt to defend

any of the incomprehensible hieroglyphic abbreviations that riddle their so-called

"notice" letters.  Nor do the defendants address the claims of systematic misapplication

of its own standards and procedures in dealing with questions about the termination

notices.   The plaintiffs have provided a litany of 'horror stories' of individuals who

have already suffered grievous loss and trauma, trying to navigate through a

bureaucracy that responds, at best, erratically and often in cross purposes with itself.

Instead of confronting these allegations, the defendants suggest,  in a cavalier fashion,

that if the plaintiffs do not understand FEMA's codes and procedures,  they can appeal.

The Court finds this abdication of responsibility incomprehensible.   This is an agency

15

charged with "alleviat(ing) the suffering and damage" which result from a disaster.  42

U.S.C. § 5121(b).  These class members have been found to be entitled to receive Section

408 assistance, meaning they are in dire need, through no fault of their own, unable to

return to their own homes or find shelter elsewhere.  The FEMA appellate process, if it

can be navigated at all, takes months.   In the meantime, the defendants appear to treat

the plaintiffs' and their prospects of homelessness and the despair and stress of such

added worries as if it were gnats to be brushed away while the defendants busy

themselves with creating more bureaucratic regulations.  To brush off the  correction of

errors to the appellate process under these circumstances of real human suffering is

simply unacceptable.

FEMA argues that, unlike the welfare benefits requiring a pre-termination

hearing in Goldberg, supra, Section 408 recipients have access to other government

benefit programs to provide "the means by which to live,"  and the government has

discretion in determining the duration of the benefits. (Rec. Doc. 51, pp. 18-19).  The

defendants also argue that Section 408 benefits do not warrant the pre-deprivation

hearing afforded public housing beneficiaries in Thompson, supra, or Caulder, supra,

because they are temporary in nature.  For purposes of the first Mathews factor, the

Court rejects the defendants' argument entirely and finds that the benefits at issue are

16

equally substantial and worthy of due process protection.

The second Mathews  factor focuses on the risk of erroneous determination of the plaintiffs' interests.  Examples of the depth and scope of those errors are established by the plaintiffs.  The Court unhesitantly finds that FEMA's notice and appeals process is fraught with the potential for mistaken determinations.

Finally, the defendants argue that the third Mathews element weighs in their favor because of the "extreme impracticalities of requiring quasi-judicial evidentiary hearings," which would take years for FEMA to complete and its current system "clearly serves [p]laintiffs' interest without crippling FEMA."  (Rec. Doc. 51, p. 21).  The plaintiffs disclaim the need for full-blown hearings.  Indeed, their request is relatively modest - a notice that is comprehensible,  an opportunity to respond in a meaningful way and an appellate process that is navigable.   Court finds that the current process is woefully inadequate even by these modest standards.

**Relief**

As noted, the plaintiffs seek an  "adequate pre-termination process."   (Rec. Doc. 63, p. 26).  The plaintiffs argue that mandatory relief on a preliminary basis has been granted where the circumstances demand that extraordinary relief and ask that any pre-termination process include a description of the process, review by an independent

decision-maker, reasoned decision making and a written explanation of the decision for

purposes of appeal.  (Rec. Doc. 63, p. 28).  "The same governmental interests that

mandate meeting of the emergency housing needs of Katrina and Rita evacuees, also

compel sufficient pre-termination process to ensure that those eligible to receive

continuing assistance actually get it."  Id.

> The relief [p]laintiffs seek is an injunction *prohibiting* FEMA from discontinuing, terminating or withholding payments of continuing Section 408 Assistance to recipients who do not receive appropriate notice and opportunity for a pre-termination hearing.  The fundamental nature of the relief is prohibitory and its intent is to preserve the status quo, not change it, because the [p]laintiffs in this case all are recipients of, not mere applicants for, Section 408 Assistance.

(Rec. Doc. 63, p. 30).  With respect to repayment demands, adequate notice and a pre-

termination hearing are sought as prohibitory relief to preserve the status quo.

Although the request to reinstate Section 408 benefits to those on appeal who did not

receive notice and hearing may be mandatory in nature, the plaintiffs argue that FEMA

has the "unilateral ability to end that obligation by providing the required pre-

termination process."   Id.

    The modest requested injunctive relief can not be characterized as unreasonable,

especially to those who may have lost everything they owned in these unprecedented

disasters.  FEMA has been created by Congress and the President to serve the needs of

18

citizens at their darkest hours, which for some citizens are being now measured in terms of years.   The Court urges the defendants to return to their original mandate of alleviating their suffering and focus its substantial powers on continuing to help those entitled to relief, including affording them the minimal due process needed to assure that they do.

**Conclusion**

This matter is before the Court on preliminary injunction and the plaintiffs need only establish the likelihood of success on the merits with regard to this motion.   The Court finds that they have.   Again, certain of the issues presented in conjunction with this motion can be revisited with regard to the pending motion to dismiss.

Accordingly,

IT IS ORDERED that the plaintiffs' motion for class-wide preliminary injunction is **GRANTED**.  (Rec. Doc. 11).   The Court will sign the order proposed by the plaintiffs, and will consider any amendment upon motion.   (Rec. Doc. 11-28).

New Orleans, Louisiana, this 13th day of June, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE